Court of Appeals. We have three cases to be submitted today on oral argument beginning with Gomez v. US Parole Commission. Mr. Bogan. May it please the court, Brad Bogan for Oscar Gomez. Before you start, please clarify something for me. I think I know the answer, but in the record excerpt for it at page two, the commission's decision, it has a comment, the commissioner's decision was made on the record because Gomez waived a hearing. Was that waiver only concerning supervised release? I just wasn't familiar with what hearing he might have waived. That's actually unclear to me based on the parole commission's procedures set forth in its manual and the statement in that commissioner determination. He did receive a hearing before an examiner at the prison where he's currently serving his sentence. The commission's procedures provide for a right to a hearing if the commissioners intend to take an action that is a substantial change from the examiner's recommendation. A substantial change is defined in the commission's manual as essentially either an increase of the offense level or the criminal history category or the possibility of an upward guidelines range. So the commission didn't actually do that. The commission simply rejected the examiner's recommendation of a release date based on the below guidelines sentence. So I'm not entirely certain what hearing it is that Gomez would have waived and for that matter, I didn't see anything else in the record that indicates that he did waive any hearing that was determined in this case is substantively unreasonable because it fails to account for the severe abuse and torture that Gomez suffered in the Mexican prison system. He was convicted in Mexico of offenses called homicide and injuries arising out of what amounted to a drive-by shooting in which he injured a mother and killed her young daughter. After he was convicted of that offense, he was taken into custody and almost immediately he was raped by one prisoner with the assistance of three other prisoners, apparently with the acquiescence of the guards in that facility. And throughout the 12 years that he was incarcerated, he was continually subjected to beatings by the guards. He served in seven different Mexican facilities during his 12 years of incarceration there. Each time he would be beaten prior to the transfer, while in transit, and upon his arrival in the new facility. Now at the hearing, the commission's examiner heard Gomez's testimony and found him to be credible about the torture and abuse that he had suffered and found that his testimony was supported by his obvious depressed state at the hearing. Now on that basis, the examiner, who had personally interviewed Gomez, recommended that he be released after service of a sentence that amounted to a sentence below the range recommended by the guidelines. The guidelines in this case would recommend a range of 188 to 235 months. The hearing examiner recommended that he be released after service of 156 months, which amounts to a 13-year sentence. The two commissioners rejected that recommendation without any real explanation whatsoever and ordered that he be released after service of 204 months imprisonment. What was the record available to the commissioners when they made that decision? They had the post-sentence report that was prepared by a probation officer. They had all the documents prepared by the hearing examiner, which included a preliminary report prior to the hearing, as well as the examiner's post-hearing report with its recommendation. There is a transcript of the examiner's hearing. I'm not sure if that transcript itself was available to the commissioners, but that hearing is recorded. So what is the reason for your uncertainty as to whether the transcript was available? My understanding is that typically transcripts are not prepared by the commission in these cases, that the normal process is to just a portable voice recorder or something like that. It so happens that in this case, I believe, and Ms. Dwyer may be able to correct me, that upon receiving the record, we requested a written transcript of that recording, in part because, as the transcript indicates, some portions of that are indicated to be inaudible. Was the recording available to the commissioners? It should have been. I don't know for certain that they reviewed it. I understand there's some sort of packet the examiner provides to the commissioners. I suppose that would be called a record, but you're not certain as to whether that included a disc or something of the recording, a disc of the hearing. I'm not certain, but I'll concede that the court can assume that was before the commissioners. All right. You're doing a good job on behalf of your client, but it just seems to me that, at least facially, this really doesn't seem substantively unreasonable. I mean, to summarize the crime, your client opened fire outside a medical clinic and killing a child and wounding her mother. I mean, the length of the sentence just doesn't offend me at all. Had that crime been committed in the United States, and had he been sentenced by a U.S. court and served that entire sentence in the U.S. prison system, that might very well be true, but the guidelines recommendation in this case, which is predicated on the conditions in the United States, doesn't take account of the fact that somebody might have been subjected to the type of abuse that Gomez was in the Mexican prison system, and the commission's own manual suggests that, in these circumstances, where a prisoner was subjected to that type of abuse in a foreign prison system, that that ordinarily would result in a sentence or a release date determination below that recommended by the sentencing guidelines. But why couldn't the commission have said, along the lines of what Judge Smith said, wow, you know, he's getting out, basically, as I read it, in about 20 years. He'll have spent 20 years in prison, and the commission says, wow, you know, that seems low for killing a kid. So, sure, he suffered this torture, and that made his time harder, but, you know, we think he probably really should have got 40 years, so even if you account for the torture, 20 years is a sufficient or, you know, necessary punishment. Well, and had the commissioners who rejected the examiner's recommendation said something along those lines, then, you know, we would have a much more difficult argument here. But there is no dispute on the record that he was, in fact, abused repeatedly and severely while in Mexico, and the commissioners who rejected that  So, it's a question of time. A lot of it was just, you know, the witnesses who witnessed it testified, correct? Correct. There weren't, we didn't have anyone from Mexico brought before the examiner. I couldn't do that. That's correct. Right. Now, so his total time served will be around 30 years, 12 in Mexico, and about 18 in a United States prison? No, the release date determination by the parole commission is based on the date that he began serving the sentence in Mexico, and that is a little convoluted because he was also sentenced for another offense at the same time in Mexico. Right, for the weapon. For a firearm offense. He initially received 10 years for that, but apparently due to a subsequent change in Mexican law, that sentence was reduced from 10 years to four years. He had already served more than four years at that point, so the Mexican courts essentially backdated the beginning date of his murder sentence to four years after the beginning date of his firearm sentence, which apparently ran consecutively. So then, as Judge Costa says, the total length of his sentence for killing a child and wounding her mother is, I think, 204 months is about 18 years, 17 and a half years. Yes, yes, 17. So total of 17 years for that. Yes, 17 years on top of the four years that he served for the related firearm offense. And again, had the commission explain why it was rejecting the examiner's determination, this would be more difficult. Had the commission explained that it had reviewed the recording, for example, and found that contrary to the examiner's finding, that his testimony about torture was not credible, again, that would be different. But here, there's no dispute on the record that he was tortured. The commissioner, the examiner found that testimony to be credible, and the commission rejected the examiner's determination, really for no reason, even though the commission's own regulations state that in these circumstances, ordinarily, that would call for a release date lower than that recommended by the sentencing guidelines. Well, I don't know what assumptions we can make. We assume that commissioners understand their own commission rules, which are not binding. That's true. And we assume they reviewed the record, so we assume by implication, they didn't think that was sufficient to give him less than a sentence within the guideline range, and they sentenced him less than midway, I think, in the case. Well, this court reviews the commission's determinations the same way as it would if a district court had imposed a sentence in a U.S. case. And when a district court, in one of our cases, hears non-frivolous grounds for a variance from the guidelines range, then the court is obligated to explain why it is that it's rejecting those reasons. Now, when the sentence is ultimately within the guidelines range, that explanation need not necessarily be extensive, but there must be some indication in the record that in that case, the district court considered the argument and rejected them. Here, in the analogous situation, there is no indication that the commission found the examiner's recommendation concerning torture to be incorrect. All that we have here is the examiner who personally interviewed Gomez and had the opportunity to observe his demeanor and hear his voice, found that he had been tortured and that he's suffering continuing physical and mental injuries as a consequence of that. Did Gomez have counsel for that examiner's hearing? Yes, he did. Your office? Yes. And your office is the one that asked for a sentence below the guideline range? Yes. We submitted a written letter to the examiner requesting a sentence below the guidelines range, and then at the hearing itself, we requested the sentence that takes into account the factors reflected in 3553A after Gomez had testified about his experience in Mexico. Okay, you've saved time for rebuttal, Mr. Bowman. Yes, I did. Mr. Duar? Good morning, Your Honors, and may it please the Court. There are two issues that I would like to address. First, I'll address why the commission's within guidelines determination is substantively reasonable. In this case, Mr. Gomez attempts to characterize the issue on appeal as whether the commission's release date determination is substantively reasonable in light of the sentencing goal set forth in 18 U.S.C. 3553A. But the actual substance of his challenge is whether the commission erred in declining to depart from the guidelines. You know, this isn't raised in your brief. You raised it a couple of days ago on a 28J letter. I'm not even sure we can consider this extremely late point you're making, which should have been made in your brief, and, of course, I think they responded yesterday morning. You filed yours on, what was it, Tuesday? Tuesday, yes, Your Honor. And, frankly, I don't think there's any basis for your comment because they didn't ask for a, quote, departure, close quote, where you go through all these hoops. They just said this offense is substantively unreasonable, which I suppose at worst is a variance. Your Honor, I understand, and I apologize for failing to include the issue in the brief, but I would remind the Court that the issue of jurisdiction can be raised at any time. It can't be waived by a party's failure to do so at an earlier time. And according to Federal Rule of Civil Procedure 12H3, if the Court determines at any time that it lacks jurisdiction, it must dismiss the action. So I do believe that it is appropriate to raise, even though it was not raised in the brief, that oral argument. But if this Court would like for me to move on, I'm happy to. That's just one judge's view. Yes, Your Honor. I don't think one second of merit to that point. Yes, Your Honor, I understand. And my argument on that behalf is just that I believe that what the petitioner is doing in this case, the only difference here is how the argument is actually being characterized. I believe the meat of the actual argument here is the Commission's discretionary decision not to depart from the guidelines, and I believe that that is what's being challenged here under the guise of a substantive reasonableness argument. Have you read the Bender decision? Judge Post was on the panel. I have, Your Honor. And it considered it. It, in fact, called it a departure, I believe, but it was in fact a variance. Yes, Your Honor, and the case was a little bit different than this one. It was more of a case of procedural reasonableness in that case. They did get to the substantive reasonableness argument, and I'm not saying that that can't be reached in a case. I don't believe that if this Court finds that it does not have jurisdiction to review a discretionary decision not to depart, that it can never get there, but it can't get there when the only issue is the departure. Well, there's always an issue of substantive reasonableness that a sentence can be challenged on, and the defense is saying, well, the fact of torture would have affected numerous factors that have to be considered, like the history of the defendant, the need to provide deterrence, the need for a just sentence. So why can't we consider the overall sentence, including the factor of this alleged torture, in assessing the overall reasonableness of the sentence? I don't argue that the Court cannot look at the overall reasonableness of the sentence, but when the only issue on appeal is the Commission's discretionary decision not to depart, that the Court does not have jurisdiction to do so. Well, the precedent you rely on is an unpublished opinion, isn't it? That's correct, but there are also published opinions that are post-Booker and post-Gaul, such as U.S. v. Sam, U.S. v. Lucas, and U.S. v. Tuma in this circuit that also cite to the same standard of review. Or a Commissioner decision? No, they are all U.S. District Court sentences in that case. Did you cite those in your 28J letter? I did, Your Honor. But, Your Honor, moving on to the substantive reasonableness in this case, Mr. Gomez still cannot prevail because in light of the factors set forth in 3553A, his sentence was substantively reasonable in this case. The first hurdle that Mr. Gomez cannot jump is the presumption of reasonableness here. Because the Commission's release date was within the guideline sentence, which was 204 months, is the determination that they actually made, it is presumed to be substantively reasonable. In order to prevail, Mr. Gomez has the duty to overcome that presumption, and he can only do so in one of three ways. In this case, he has asked this Court to find that the Commission failed to take into account a significant factor that it should have considered. And in this case, that factor is the abuse that he claims to have suffered while incarcerated in Mexico. The record in this case shows that that abuse was considered by the Commission in making its final determination. Mr. Gomez's detailed description about the abuses that he suffered, including the types of abuses he suffered, how often he suffered those abuses, where he suffered them, by whom he suffered them, they're all included in the pre-sentence investigation report in the Transfer Treaty Hearing Summary that was prepared by the examiner who heard the words from his mouth, and also in the audio recording of the hearing itself, which is available to the Commissioners when they're making their final decisions. And while making their final determination, the Commission had access to all of that information, and in the final order, the Commission attested that it carefully examined all of the information at its disposal, which would have included those three things. What happened here is that the Commission just did not agree with the recommendation here. The Commission did not disagree with any of the factual findings that were actually made by the hearing examiner. It did not, the Commission does not contest that Mr. Gomez suffered any of these abuses that he claims to have suffered. It does not question any of the determinations of credibility made by the hearing examiner. The Commission simply determined that the guideline determination that was appropriate in light of the sentencing goal set forth in 3553A was within guideline sentence of 204 months. Why did the Commission not hold a hearing? I'm sorry? Why did the Commission not hold a hearing? The Commission not hold a hearing? The Commission delegates its authority to hearing examiners to hold those hearings, unless the Court is talking about the hearing, the new hearing under 2.6807 in the Parole Commission's manual. Your Honor, the reason that the Parole Commission did not hold a hearing is because the language of 2.68-07, there are two things necessary for that to apply. There's a substantial change in the manner adverse to the transferee, and in addition to that, there has to be, the basis for the Commission's decision to view the case differently was not discussed at the hearing. In this case, the basis for them to view the decision differently was discussed at the hearing. The transferee was made aware of the applicable guideline range, that it was 188 to 235 months, and he was made aware that the hearing examiner's decision was not the final decision in this case. So Mr. Gomez was aware that the Commission could determine a within-guideline sentence in this case, and that's why he was not granted a new hearing under that specific rule. What is the reference in the Commission's decision, Transfer Treaty Determination, at page two of their decision, that this determination was made on the record without a hearing because transferee waived a hearing to expedite the decision? Now, what hearing is that? Your Honor, I agree with counsel here. To my knowledge and based on the record, Mr. Gomez did not waive any hearing in this case. I'm not certain what it refers to in this case because he certainly did receive a treaty transfer determination hearing in this case, and I don't believe that he waived any subsequent hearings. Would it have been just about supervised release or something? It's possible, but from the record, it's not clear. Is this case typical in terms of how informal the Commission's decision-making process is? I mean, what I see, one Commissioner sends a one-paragraph memo, another Commissioner just signs it, the third Commissioner I don't see ever having signed it or reviewed it, and then the order gets issued. I mean, is that what you typically get in terms of an explanation in the decision-making process? It depends whether or not there's an agreement with the hearing examiner's determination, but it is typical in that if a Commissioner disagrees with a hearing examiner, typically they will draft a memo that has an indication of why they are disagreeing with the hearing examiner's recommendation, which is what Commissioner Masseron did in this case, and then a second hearing examiner will review that and either agree or disagree. If you have a second final order in that case, so it is typical that there would be a memo set forth kind of at least explaining. I know I can concede that this is not the most detailed memo that the Commission has ever made here, but it does have reasoning in it, and it does specifically cite that 18 USC 3553 was considered and that the factors in that statute were considered, and it also specifically identifies Mr. Gomez's crime as being the basis for the disagreement. It mentions that he caused death and injuries to innocent people. It references that there are two victims in the case, and that is why the Commission disagreed with the hearing examiner's recommendation. I believe you're referring its record excerpt 3 to the 28 April 2015 memo yes your honor by Commissioner Masseron yes your honor and is it just for the file it's it's for the file and also to notify the second commissioner in the case of the reason that they are disagreeing with the hearing examiner's recommendation that was what I thought but if the last the second to last the penultimate sentence says your wow you are foreign labor credits and good conduct time credits if any will be deducted it says saying you're of course he's not referring to the second commissioner he's referring to Gomez it's as if he's writing it to Gomez yes your honor I understand to Gomez's counsel um it would have probably it would have been requested by Gomez's counsel either in a foyer request or on a request for appeal in the case it is drafted your honor I concede poorly it should not say your because it is not to Mr. Gomez himself it is a memo made for the file and for the second commissioner to review this is nine days before the 7 May 2015 written decision yes your honor so after the hearing the commissioners would have reviewed the hearing examiner's recommendation along with the record in the case which we've talked about which would have been the pre-sentence report the summary and then also the audio recording which was available to them and after he reviewed those items he drafted this memo before making the final order in the case it's signed and initialed at the bottom pk kush kushwa kushwa yes your honor on the 1st of May so benefit of seeing this but as indicated by her name and date prior to this 7 May decision that's correct your honor and then a final order was entered um entered after that your honor what the commission did here is that it found that the seriousness of Mr. Gomez's while it's unfortunate that Mr. Gomez suffered such torture and while he was incarcerated abroad it does not erase the actual crime that he committed the crime had multiple victims you concede he was tortured yes your honor we concede that he was tortured the commission does not challenge the description that he provided um during his hearing or the description that was provided in the pre-sentence investigation report your honor but but even taking that punish him for the for his crime the evidence of the torture was carefully considered and weighed by the commission why do you say that your honor i say that because of not only the determination that was made itself which was 204 months um which was well below what they could have actually given Mr. Gomez in a within guideline sentence they could have gone up to 235 months so we can see that the of the crime um again although by implication i'm sorry by implication of the sentence itself yes but then um in addition to that if we look at the memo um commissioner masseron cites to the statute he specifically identifies the crime that was committed by Mr. Gomez and uses that as a reason to decline um to decline the departure based on the recommendation of counsel brought up the manual language um that what are what the commission ordinarily does in these cases and in fact it actually does follow the manual language because what the manual says is in a case of torture or other severe abuse an earlier release date than the full term date of the foreign sentence ordinarily will be appropriate and in this case the commission did apply a sentence that was earlier than the foreign sentence um in this case i believe the foreign sentence in this case um the full term date was may 31st 2031 so that would be the full term date of the foreign sentence and the commission has um i believe that would be eight years earlier than the actual full term date so we can also see that it was weighed that the torture was considered in that because it would have been interesting it would have been helpful if that even mentioned the word torture in this very brief one paragraph memo and and very sparse decision is the commission just swamped with transfer decisions and i thought the guidelines made their task pretty simple your honor i agree that the memo lacks some substance but i do believe that it is enough for this court to see that the commission did consider it and in addition to that the court should look at the record as a whole because the commission looks at the record as a whole when it makes its final determination and we can see that the torture was considered on many different levels before it got to the final determination here the length of the term of service for a commissioner on the parole commission oh it varies um because they keep they continue to get extended but i'm not sure off of the top of my head what it is it just will depend whether or not they are reappointed in these cases but i can find that out for you and supplement if you would like i'm just concerned about the sparsity of reasoning etc when in the light of the guidelines taking away a great deal of parole commission's work you would think more effort would be put into these decisions yes your honor i can understand that the the memorandum was sparse it does not give a lot of information in this case doesn't even name the reason it doesn't even identify the word use the word torture yes your honor i agree that it does not and um i agree that it could have been better in this case but i think it's ultimately a harmless error here because because the determination that was made was reasonable in this case and i think just because we add the word torture to this memorandum um it wouldn't change what happened in this case it wouldn't change that a within guideline sentence is unless the court has um further questions we would ask the court to affirm the commission's release release state in this case thank you mr ogen you save time for a boat uh the file memo from commissioner masseron that miss guire referred to i don't think and bear the weight that she's placing on it she says that the memo offers the rationale that it was a serious offense and that he caused the death and injury to innocent people but that's not really offered as a rationale in this memo for anything it's simply a restatement of what his crime was a thumbnail sketch of what the facts were it refers to the recommendation of the hearing examiner and then says after considering the applicable guideline range and the factors listed in 35 53a the transferee will be released after services what's your understanding of the purpose of this memo is this a bench memo to the other parole commissioner i don't know i'm not familiar with that certainly not made a part of the decision uh not incorporated in the decision well not mentioned in the decision if even if it is it doesn't actually offer a rationale for rejecting the examiner's recommendation and it's also not enough that the commission simply consider the claims of torture and abuse the presumption of reasonableness that applies to within guidelines determinations can be overcome if the determination fails to give fails to account for a significant factor that should receive significant weight here that's the torture and abuse that gomez suffered so even if the commission considered it the determination is nevertheless substantively unreasonable because that determination does not give that factor sufficient weight finally i'll just address the commission's jurisdictional argument even assuming that a discretionary refusal to depart is unreviewable on the part of the court the parole commission's discretionary refusal to depart departures are not the only avenue for imposing a determination outside the guidelines range there are also variances as there have been since the supreme court's decision in booker and parole commission determinations just as any other sentence imposed by a district court are subject to review for substantive reasonableness and the argument that gomez makes here is that the commission's determination is substantively unreasonable is there anything we'll find in this record where your office ever used the word departure there is in a letter submitted prior to the hearing it's at page 264 of the record a letter dated august 11 2014 gomez's counsel in a paragraph captioned gall and kimbrough said the defendant respectfully objects the advisory guidelines range set forth is well in excess of a reasonable sentence within the meaning of 18 usc section 3553 and the supreme court's decisions in gall and kimbrough we acknowledge that paragraphs 87 and 88 referring to the post-sentence report setting out factors that may warrant departure for reasons of torture and sexual assault and then there's a paragraph captioned other 3553a factors and again says that a sentence within the guide or requesting a variance slash departure from the advisory guidelines and asking the commission to fashion a sentence which is sufficient but not greater than necessary which is the language of 3553a in order to meet the requirements of that statute so yes gomez's counsel used the word departure he also used variance he also used the language of 3553a impose a sentence sufficient but not greater than necessary and the commission's release date determination is greater than necessary on the facts of this case and is therefore substantively you're saying he said variance slash departure or departure slash variance uh didn't say slash departure yes yeah after booker i'm not sure where one starts and another ends frankly well and just as a matter of practice in district court often the arcane technical distinction between the two is elided and defendants ask for sentences below the guidelines for various 3553a factors district courts consider them and then make the decision and sentences are often appealed on grounds of substantive unreasonableness all right thank you mr brogan your case is under submission thank you